Appeal of SECURITIES INVESTING    Docket No. 224
FUND, INC.

A corporation owning shares of stock in a number of different domestic corporations and in 1919 receiving dividends from some of them and profits from the sale of some of them is entitled to include in admissible assets for 1919 such part of the capital invested in the shares as the profit from the sales bears to the total income from all inadmissible assets.

Submitted November 10, 1924; decided January 13, 1925.

*W. H. Kellogg, Esq.*, for the taxpayer.

*A. Calder Mackay, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before GRAUPNER and SMITH.

This appeal is from a proposed assessment of additional profits tax for 1919. The material facts alleged by the taxpayer are admitted by the Commissioner.

### FINDINGS OF FACT.

1. The taxpayer is a New York corporation, with its principal office at 24 Broad Street, New York, N. Y.

2. A deficiency letter stating that the determination of the taxpayer's profits tax liability for 1919 showed an additional tax due of $7,601.62 was mailed to the taxpayer on or about July 30, 1924. Appeal therefrom has been duly taken to this Board.

3. During the year 1919 the taxpayer was engaged in the business of buying, holding, and selling securities for its own account.

4. The following facts alleged in the taxpayer's petition are admitted to be true by the Commissioner in his answer thereto:

Net income for 1919 was_____ $166, 595. 45
Invested capital_____ 3, 087, 026. 32
Total average gross assets_____ 5, 246, 378. 30

which last amount is made up as follows:

Cash, interest and dividends accrued, bonds (not tax exempt),
 notes and unearned discount_____ $943, 709. 13
Stocks_____ 4, 302, 669. 17

The Commissioner has found that all of the above assets, excepting the stocks, are admissible assets, but has allowed as admissible assets only a portion of the stocks which the taxpayer contends are admissible.

The facts with regard to the stockholdings of the taxpayer for the year 1919 and the amount and source of the income therefrom found by the Commissioner and admitted by the taxpayer are as follows:

*Year ended December 31, 1919.*

| | Dividends. | Profit on sales. | Total income. | Average cost for year. |
|---|---|---|---|---|
| 1. Elevated Railways, (unincorporated)_____ | $22, 796, 00 | _____ | $22, 796. 00 | $571, 000. 00 |
| 2. Sussex Realty Co_____ | _____ | _____ | _____ | 708, 000. 00 |
| 3. Moose Mountain (Ltd.) (Canadian corporation not subject to United States income tax)___ | _____ | _____ | _____ | 275, 000. 00 |
| 4. Chesnee Mills Co_____ | 4, 000. 00 | $90, 000. 00 | 94, 000. 00 | 66, 849. 30 |
| 5. International Cotton Mills_____ | 13, 230. 00 | 17, 177. 41 | 30, 407. 41 | 177, 536. 16 |
| 6. Clinchfield Coal Corporation_____ | 24, 939. 05 | _____ | 24, 939. 05 | 1, 050, 000. 00 |
| 7. Carolina, Clinchfield & Ohio_____ | _____ | _____ | _____ | 300, 000. 00 |
| 8. Seaboard Air Line voting trust certificates for stock___ | _____ | _____ | _____ | 366, 608. 67 |
| 9. Southern Potteries_____ | 14, 058. 62 | _____ | 14, 058. 62 | 94, 400. 00 |
| 10. Kingsport Extract Corporation_____ | 3, 920. 00 | 82, 025. 00 | 85, 945. 00 | 26, 403. 90 |
| 11. Greelock Co_____ | 13, 000. 00 | _____ | 13, 000. 00 | 150, 000. 00 |
| 12. Coal Sales Co_____ | _____ | _____ | _____ | 8. 04 |
| 13. J. Spencer Turner Co_____ | 16, 483. 06 | _____ | 16, 483. 06 | 217, 591. 40 |
| 14. Ponds Extract Co_____ | 1, 383. 75 | ¹ 756. 00 | 627. 75 | 24, 819. 66 |
| 15. Mechanics & Metals National Bank_____ | 1, 850. 00 | _____ | 1, 850. 00 | 35, 276. 71 |
| 16. Continental Trust Co_____ | 2, 400. 00 | _____ | 2, 400. 00 | 30, 509. 59 |
| 17. Illinois Savings & Trust Co_____ | 2, 501. 00 | _____ | 2, 501. 00 | 56, 609. 59 |
| 18. Philadelphia Co_____ | 10, 875. 00 | 48, 552. 00 | 58, 427. 00 | 76, 231. 22 |
| 19. Borden's Condensed Milk Co_____ | None. | 15, 962. 00 | 15, 962. 00 | 75, 824. 93 |
| Total_____ | 131, 436. 48 | 252, 960. 41 | 384, 396. 89 | 4, 302, 669. 17 |

¹ Loss.

Of the above stocks the Commissioner has allowed as admissible assets only $602,597.91, made up as follows:

All of the Moose Mountain (Ltd.) stock, and the Borden's Condensed Milk stock, and in addition only the portion of each particular

stock from which income was derived both by way of sale and by dividends, which the gain derived from the sale thereof bears to the entire income received from the particular stock.

On this basis the Commissioner has determined that the inadmissible assets comprise 70 5,261/10,000 per cent of all assets and that the portion of $3,087,028.32 invested capital, which is admissible, or invested capital, adjusted, is $910,176.34. The Commissioner has, therefore, computed the tax as follows:

| | |
|---|---:|
| Excess-profits tax | $18, 156. 06 |
| Income tax at 10 per cent | 14, 643. 84 |
| Total tax assessable | 32, 799. 90 |
| Tax assessed | 25, 198. 28 |
| Additional tax | 7, 601. 62 |

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final decision of the Board will be settled on consent or on seven days' notice, in accordance with Rule 50.

### OPINION.

SMITH: This appeal raises the question of the correct method to be used in computing the taxpayer's invested capital for the year 1919. It had total average gross assets for the year of $5,246,378.30 and invested capital (including all assets as admissible) of $3,087,-028.32. The Commissioner determined the amount of the admissible assets as follows:

| | |
|---|---:|
| 1. Cash, interest, and dividends accrued, bonds (not tax exempt), notes, and unearned discount | $943, 709. 13 |
| 2. Shares of stock of Moose Mountain (Ltd.) (Canadian corporation not subject to United States income tax) | 275, 000. 00 |
| 3. Shares of stock of Borden's Condensed Milk Co | 75, 824. 93 |
| 4. Shares of stock of Chesnee Mills Co. 1 90/94 of $66,849.30 | 64, 004. 65 |
| 5. Shares of stock of International Cotton Mills 17,177.41/30,407.41 of $177,546.16 | 100, 291. 71 |
| 6. Shares of stock of Kingsport Extract Corporation 82,025/85,945 of $26,403.90 | 25, 199. 60 |
| 7. Shares of stock of Philadelphia Co. 48,552/59,427 of $76,231.22 | 62, 281. 09 |
| | 1, 546, 311. 11 |
| 8. Error in computation | 4. 07 |
| Total | 1, 546, 307. 04 |

This total was found to be 29.4739 per cent of the total invested capital of $3,087,208.32 and the taxpayer was therefore allowed a statutory invested capital of $910,176.34. The additional tax proposed for assessment is based upon this amount of invested capital.

It will be noted from the foregoing that the Commissioner has allowed as admissible assets, in addition to cash items, the investment of the taxpayer in the stock of a Canadian corporation not subject to United States income tax, its investment in the stock of

Borden's Condensed Milk Co., the total income from which was a profit upon the sale of some or all of the stock, and the portion of the taxpayer's investment in each particular stock from which income was received both by way of sale and by way of dividends which the gain from the sale was of the entire income from the investment in the particular stock.

The taxpayer alleges error on the part of the Commissioner in thus determining its statutory invested capital and contends that its correct invested capital was at least $2,154,328 and that not only is it not liable to any additional assessment of tax but that it has already overpaid the tax due by the amount of $8,738.84. It assigns as error on the part of the Commissioner that—

(1) He has not allowed as admissible assets in determining the taxpayer's statutory invested capital the whole or any part of its capital invested in stocks of domestic corporations owned by the taxpayer during the year 1919, from which stocks no dividends were received.

(2) He has not allowed as admissible assets in determining statutory invested capital the part of the stocks of domestic corporations from which dividends were received which profit derived from the sale thereof bears to the entire income therefrom.

(3) He has allowed as admissible assets only the portion of each particular stock from which a gain was derived by sale which the gain from the sale bears to the whole income therefrom and has not followed the direction of the law that—

where the income derived from such assets (stocks, the dividends from which are not included in computing net income) consists in part of * * * profit derived from the sale * * * thereof * * * a corresponding part of the capital invested in such assets shall not be deemed to be inadmissible assets.

(4) He has held that—

stocks * * * the dividends * * * from which are not required to be included in computing net income, are inadmissible assets even though no such dividends * * * have been actually paid or received. The failure to pay or to receive dividends * * * does not change the status of such securities as inadmissible assets. (Article 815, Regulations 45 and Regulations 62.)

(5) He has held that—

where the income derived from inadmissible assets consists in part of profit from the disposition thereof, * * * a corresponding part of the capital invested in such assets shall be deemed an admissible asset. This article applies separately to each issue or class of inadmissible securities held by a corporation. (Article 817, Regulations 45 and Regulations 62.)

These assignments of error are all predicated upon an alleged erroneous misconstruction of that paragraph of section 325 (a) of the Revenue Act of 1918 defining "inadmissible assets." Upon this point the taxpayer contends—

1. That its investments in all stocks from which no dividends were received during 1919 are admissible assets.

2. That if the above contention is denied, then, where income derived from such investments in stocks of domestic corporations consists in part of gain or profit from the sale thereof, the part of all such capital so invested is admissible which the total gain from

sales bears to the entire income therefrom; that is to say, in this case, that all the capital invested in Moose Mountain (Ltd.), is admissible, and in addition $\frac{252,960.41}{384,396.89}$ of the capital invested in other stocks.

Section 325 (a) of the Revenue Act of 1918 provides in part as follows:

> The term "inadmissible assets" means stocks, bonds, and other obligations (other than obligations of the United States), the dividends or interest from which is not included in computing net income, but where the income derived from such assets consists in part of gain or profit derived from the sale or other disposition thereof, or where all or part of the interest derived from such assets is in effect included in the net income because of the limitation on the deduction of interest under paragraph (2) of subdivision (a) of section 234, a corresponding part of the capital invested in such assets shall not be deemed to be inadmissible assets.
>
> The term "admissible assets" means all assets other than inadmissible assets, valued in accordance with the provisions of subdivision (a) of section 326, section 330, and section 331.

Article 817 of Regulations 45 (1920 edition) construes this provision of the law in the following language:

> ART. 817. INADMISSIBLE ASSETS; PARTIAL EXCEPTION.—(a) Where the income derived from inadmissible assets consists in part of profit from the disposition thereof, or (b) where all or a part of the interest derived from such assets is in effect included in net income because the interest paid on indebtedness incurred or continued to purchase or carry such assets may not be deducted from gross income, in either case a corresponding part of the capital invested in such assets shall be deemed an admissible asset. This article applies separately to each issue or class of inadmissible securities held by a corporation. For example, it may hold A company stock costing $100,000 and B company stock costing $200,000. During the year it receives $8,000 in dividends from A company and $5,000 from B company, and on September 30 sells part of its B company stock at a profit of $3,000. For the period from January 1 to September 30, $75,000 of its holdings of B company stock becomes admissible. After September 30 its remaining holdings of B company stock are inadmissible, but the proceeds of the sale are admissible unless invested in inadmissibles. See articles 852 and 854.

The first contention of the taxpayer has to do with the proper construction of the clause contained in the definition of "inadmissible assets," which reads:

> the dividends or interest from which is not included in computing net income.

The position of the taxpayer is that before an investment in the shares of stock of a domestic corporation may be classed as an inadmissible asset, the shares of stock must *produce* during the year under review *nontaxable income* and that such income must be received by the taxpayer. The position of the Commissioner upon this point is that the theory of the excess-profits tax is the imposition of a tax on income in excess of what is considered by Congress a normal return on the investment; that it was contemplated by Congress that the surplusage of income over a fixed percentage return on the capital invested to secure the income should be taxed; that if there is an investment in assets, the income from which is tax-exempt, it is without the scope of the capital and profits tax theory that the income which is taxable must exceed an augmented exemption computed with reference to a capital removed from the operation of the tax.

The Board is of the opinion that the position of the taxpayer upon this point is unsound. The excess-profits tax, as its name implies, is a tax upon income from capital in excess of what was considered by Congress a normal return thereon. The capital upon which such normal return is computed is not to be increased by the inclusion therein of nontaxable-income-producing capital. There is only one exception to this rule, namely, an investment in obligations of the United States. Theoretically, it is of no consequence whether a corporation receives nontaxable income from its investments. The taxable income is not increased by the receipt of such income and there is therefore no good reason why its admissible assets should be increased by the addition thereto of any part of the capital producing such income.

We are of the opinion that the words " the dividends or interest from which is not included in computing net income " identify a type or class of investment and that they have no reference to *received* income. This is the interpretation which has been consistently given to the language in question by the officers charged with the administration of the statute and we think it is sound.

The second contention made by the taxpayer is, in our opinion, more tenable.

The Revenue Act of 1917 (section 207) specifies certain items which were not to be included in invested capital, namely, stocks, bonds (other than obligations of the United States) or other assets the income from which was not subject to the excess-profits tax. Article 45 of Regulations 41, interpreting this provision of the act, provides:

ART. 45. WHEN INCOME FROM TAX-FREE SECURITIES CONSISTS PARTLY OF TRAD-ING PROFITS AND PARTLY OF INTEREST, DIVIDENDS, ETC.—Whenever income con-sists partly of gains or profits subject to the excess-profits tax arising from trading in stocks, bonds, etc., the dividends or interest on wh'ch are not sub-ject to such tax, and partly of such dividends or interest, then, subject to the limitations as to borrowed money, there shall be included in the invested capital an amount which bears the same ratio to the total amount invested in such stocks or bonds as the amount of such gains or profits bears to the total amount of such income.

It will be noted from the foregoing that there is no provision in this regulation that the inadmissible assets in the form of shares of stock held in other domestic corporations and tax-exempt securities should be classed separately as to each issue or class. This interpretation of the 1917 law was apparently in effect at the time of the passage of the Revenue Act of 1918. In the preliminary edition of Regulations 45, promulgated shortly after the passage of the Revenue Act of 1918, article 817 contains no provision to the effect that " this article applies separately to each issue or class of inadmissible securities held by a corporation."

The history of the legislation resulting in the enactment of the Revenue Act of 1918 would seem to indicate that there was no intention on the part of Congress to modify the ruling of the bureau contained in article 45 of Regulations 41 upon the legal point involved. Senator Simmons, in explaining to the Senate the changes and amendments that had been made in the House bill by the Committee on Finance on December 10, 1918, said (Congressional Record, p. 253):

Mr. President, besides the changes to which I have referred, your committee has made quite a number of important amendments intended to relieve against hardships and injustice that have been disclosed in the administration of the present law as the result of the rigid, inflexible definitions of invested capital.

As a result, in the administration of the present law, the department, as these cases have developed, has been forced, to avoid manifest injustice, to resort to alleviative regulations and constructions.

Your committee has adopted and written into the bill the substance of some of these regulations so as to give them the force and effect of law.

In support of the interpretation which has been placed upon the statute by the Commissioner in article 817 of Regulations 45 (1920 edition) the Commissioner presents a hypothetical case of the situation which would exist if the contention made by the instant taxpayer were to prevail. He uses for an illustration the following:

Conceive that the securities company had possessed two asset funds, each of one million dollars; the first invested in an office building and the second in a hundred dollar New York State bond, the remainder being represented by wildcat mining company stock. Summarized, the year's transaction might have been as follows:

| Asset. | Capital invested. | Net income. | Commissioner's capital exemption. | Taxpayer's capital exemption. | Commissioner's taxable income | Taxpayer's taxable income. |
|---|---|---|---|---|---|---|
| Office building | $1,000,000 | $100,000 | $80,000 | $80,000 | $20,000 | None. |
| New York State bond [1] | [1] 100 | [1] 10 | 8 | 8 | 2 | |
| Wildcat stock | 999,900 | None | None | 79,992 | | |
| Total | 2,000,000 | 100,010 | 80,008 | 160,000 | 20,002 | None. |

[1] Specific exemption ignored.

On December 31 this bond was sold for $110, no part of which represented accrued interest; the proceeds were the same day invested in wildcat stock.

It is pointed out in the example given above that the taxpayer's contention would make it incumbent upon the Commissioner to allow as admissible assets the entire amount of money invested in the New York State bond and in the wildcat mining company stock. This contention would, of course, be true if the taxpayer received no nontaxable interest from the New York State bond.

A parallel case might be cited by the taxpayer to the effect that if the A corporation had $100,000 invested in the stock of the X corporation and $100,000 in the stock of the Y corporation and it received no dividends from either stock but sold at the end of the year the X company stock at a profit of $10,000 and the Y company stock at a loss of $15,000, the Commissioner would permit the inclusion in admissible assets of the $100,000 invested in the X corporation stock, although in point of fact it had no income or gain, but a net loss of $5,000 from its investment in inadmissible assets.

An inspection of section 325 (a) of the Revenue Act of 1918 shows that that act classifies assets either as "admissible" or "inadmissible." Every asset falls in one or the other of these groups. The term "inadmissible assets" is defined first and these assets are carved out of the total assets of the corporation. All assets which are not "inadmissible assets" are by definition "admissible assets." "Inadmissible assets" are defined as meaning "stocks, bonds, and other obli-

gations (other than obligations of the United States), the dividends or interest from *which* is not included in computing net income, but where the income derived from *such assets*, consists in part of gain or profit derived from the sale or other disposition *thereof*, * * * a corresponding part of the capital invested in *such assets* shall not be deemed to be inadmissible assets." What is the antecedent of the words " which," " such assets," and " thereof."

Upon this point the Commissioner contends—

The taxpayer's whole argument is based upon the plurality of the word "assets" as used in the last phrase of the foregoing section (quoted above). If the word " assets " as therein used means all of the taxpayer's " inadmissible assets," then the word " thereof " would naturally mean all of its " inadmissible assets," which plainly demonstrates the fallacy of counsel's (taxpayer's) argument. In the light of any such construction as this all of the inadmissible assets would have to be sold, which was plainly not intended. The words " such assets " as used in the last phrase of the section plainly refers to only two kinds of assets, namely, (1) assets, the income from which " consists in part of gain or profit derived from the sale or other disposition thereof," and (2) assets the interest from which " is in effect included in income because of the limitation " under section 234 (a) (2).

We do not think that this reasoning is very persuasive. If under such construction the word " thereof " would mean all of the taxpayer's " inadmissible assets," as suggested by the Commissioner, then the word would mean all of the shares of stock of a particular " issue or class " under article 817 of Regulations 45 (1920 edition). Neither the law nor the regulation has ever been construed in that manner.

The only possible antecedent of the words " which," " such assets," and " thereof " is " inadmissible assets " which are defined as " stocks, bonds, and other obligations (other than obligations of the United States)." There is no implication or provision that the inadmissible assets shall be divided into issues or classes for the purpose of determining the amount of such assets which may be considered as admissible assets. We do not think that the Commissioner has any authority to limit the scope of the words " such assets " as has been done in article 817 of Regulations 45 (1920 edition). Such an interpretation of the statute is tantamount to legislation and results in imposing upon the instant taxpayer a greater tax than it would be subject to if the words " such assets " were made to refer to their only expressed and only possible antecedent. The Board is of the opinion that the second contention of the taxpayer is meritorious and should be sustained.